Jonas Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

AYREANNE BORDEAUX, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

ANGARA, INC.,

*Defendant*.

Case No. 5:25-cv-02848-SSS-AYP

**FIRST AMENDED CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## Table of Contents

I. Introduction. 1
II. Parties. 2
III. Jurisdiction and Venue. 3
IV. Facts. 3
A. Defendant's deceptive sales and discounts. 3
B. Defendant's advertisements are unfair, deceptive, and unlawful. 13
C. Defendant's advertisements harm consumers. 14
D. Plaintiff was misled by Defendant's misrepresentations. 15
E. Defendant breached its contract with and warranties to Ms. Bordeaux and the putative class. 17
F. No adequate remedy at law. 18
V. Class Action Allegations 19
VI. Claims. 21
First Cause of Action: Violation of California's False Advertising Law (FAL) 21
Second Cause of Action: Violation of California's Consumer Legal Remedies Act (CLRA) 23
Third Cause of Action: Violation of California's Unfair Competition Law 25
Fourth Cause of Action: Breach of Contract (California law) 28
Fifth Cause of Action: Breach of Express Warranty (California law) 29
Sixth Cause of Action: Quasi-Contract/Unjust Enrichment (California law) 30
Seventh Cause of Action: Negligent Misrepresentation (California law) 31
Eighth Cause of Action: Intentional Misrepresentation (California law) 32
VII. Relief. 33

## I. Introduction.

1. Advertised "sale" prices are important to consumers. Consumers are more likely to purchase an item if they know that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2. While there is nothing wrong with a legitimate sale, a fake one—that is, one with misleading regular prices, discounts, or end dates—is deceptive and illegal.

3. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

4. Moreover, section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501. So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits this flavor of fake discount (where the advertised former price is not the prevailing price during the specified timeframe).

5. In addition, California's Consumers Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

6. Moreover, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely

suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

7. So, as numerous courts have found, fake sales violate these laws. They also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

8. Defendant Angara, Inc. ("Angara" or "Defendant") sells and markets jewelry products and accessories online (the "Angara Products" or "Products"). The Products are primarily sold online through Defendant's website, www.angara.com.

9. On its website, Defendant lists purported regular prices and advertises purported "LIMITED TIME" discounts from those listed regular prices. These include sitewide discounts of at least 10% off "SITEWIDE" using a coupon code that is "auto-applied at checkout."




10. Far from being time-limited, however, discounts on Defendant's Products are almost always available. As a result, the list prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are regularly available for less than that. The purported discounts Defendant advertises are not the true discounts the customer is receiving. Nor are the purported discounts "LIMITED TIME"—quite the opposite, they are nearly always available.

11. As described in detail below, Ms. Bordeaux bought supposedly discounted jewelry from Angara's website and was misled by Angara's deceptive sales. She brings this case for herself and similar consumers nationwide who purchased discounted Angara Products.

**II. Parties.**

12. Plaintiff AyreAnne Bordeaux is domiciled in Sugarloaf, CA.

13. The proposed class includes citizens of every state.

14. Defendant Angara, Inc. is a Delaware corporation with its principal place of business at 550 South Hill St, Suite 1015, Los Angeles, CA 90013.

## III. Jurisdiction and Venue.

15. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant. According to Forbes, Angara generated over $100 million in revenue in 2024 alone.[1]

16. The Court has personal jurisdiction over Defendant because Defendant resides in this District and it sold Angara Products to consumers in California, including to Plaintiff.

17. Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District. Venue is proper under 28 U.S.C. § 1391(c)(2) because Defendant is subject to personal jurisdiction in this District. Venue is proper under 28 U.S.C. § 1391(d) because Defendant is subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Angara Products to consumers in California and this District, including to Plaintiff. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

## IV. Facts.

### A. Defendant's deceptive sales and discounts.

18. Defendant Angara sells and markets jewelry products and accessories. Angara sells its Products directly to consumers online, primarily through its website, www.angara.com.

---

[1] https://www.forbes.com/sites/pamdanziger/2024/06/11/ceding-the-diamond-jewelry-battle-angara-prospers-with-color-gemstones/.

19. On its website, Defendant creates the false impression that its Products' regular prices are higher than they truly are.

20. On its website, Defendant advertises sitewide discounts of at least 10% off the list prices. Reasonable consumers interpret Defendant's advertisements to mean that if they buy now, they will be getting a discount from the prices that Defendant usually charges for its Products.

21. Angara advertises these discounts extensively, on the page for each category of item that Defendant sells (bracelets, earrings, etc.), on the search page, individual product pages, and during checkout. Example screenshots are provided on the following pages:




*Captured July 10, 2023 (ring category page)*




*Captured January 27, 2024 (engagement rings category page)*




*Captured May 25, 2024 (engagement rings category page)*




*Captured October 3, 2024 (earring category page)*




*Captured December 8, 2024 (necklace and pendants category page)*




*Captured April 26, 2025 (bracelets category page)*




*Captured May 14, 2025 (necklaces and pendants category page)*




*Captured June 7, 2025 (engagement rings category page)*




*Captured June 20, 2025 (rings category page)*




*Captured June 26, 2025 (earrings category page)*




*Captured August 7, 2025 (earrings category page)*




*Captured September 9, 2025 (engagement rings category page)*




*Captured October 7, 2025 (earrings category page)*




*Search Page captured October 15, 2025*




*Product Page captured August 19, 2025*




*Checkout captured August 19, 2025*

22. By definition, reasonable consumers expect a sale to be time-limited (otherwise, it is not a sale, it is just the regular price). Defendant further emphasizes the supposed time-limited nature of its sales by stating that they are available only for a "LIMITED TIME." Even when Defendant does not explicitly state that the discount is available only for a "LIMITED TIME," it attributes the discount to an event like Mother's Day or Valentine's Day. Reasonable consumers see those advertisements and reasonably understand that once the event mentioned in the advertisement has passed,

the discount will no longer be available. But in reality, the discounts are nearly always available.

23. To confirm that Defendant regularly offers discounts off purported regular prices, Plaintiff's counsel performed an investigation of Defendant's advertising practices using webpage archival services like the Internet Archive's Wayback Machine (available at www.archive.org)[2] and a similar webpage archiving service (available at arquivo.pt). Counsel collected screenshots of Defendant's website, www.angara.com, from the Internet Archive's Wayback Machine from October 2024 to today (a year sample). Screenshots of Angara's jewelry product pages were collected approximately every few weeks (when archives were available). Among the 15 shots collected, a purported discount of at least 10% off was visible in 13 shots (86%). Full sale information is in the unique possession of Angara. This sample confirms that Defendant's sales are available the vast majority of the time.

24. Reasonable consumers do not realize the fake nature of the sale. It is not apparent from merely purchasing the Products, because the sale appears to be a bona fide sale. Consumers do not have any reason to go back to the website day after day to discover that there is still a sale. And, even a consumer who occasionally checks the website would reasonably believe that there happened to be another sale. Discovering Defendant's deception required extensive mining of internet archives, which revealed that the sale is not limited in time, that the discounts are fake, and that the advertised regular prices are fake.[3]

---

[2] The Internet Archive is a library that archives web pages. https://archive.org/about/.

[3] A limited set of Products are sometimes excluded from discounts (for example, wedding rings). Other than these exclusions, the advertised sales are sitewide and nearly always available. And, as explained below, the proposed class only includes consumers who purchased Products advertised at a discount.

25. Defendant's purported discounts require consumers to apply a coupon code to the order to get the discount. But Defendant has programmed its website such that the coupon code is applied automatically, without the consumer needing to actually do anything to have the coupon code applied and receive the discount. And, as shown in the screenshot below, Defendant's advertisements inform customers that the "Coupon code [is] auto-applied at checkout." So during the sales, substantially all of Defendant's customers purchase at the supposedly discounted price (not the purported regular price).




26. Defendant's sales often only apply to orders over $500. But the vast majority of products on Angara's website (including the one Plaintiff bought) cost more than $500 and thus, for these products, the sale applies to even the purchase of a single item. Plus, in any event, reasonable consumers want to access Defendant's sales and thus, will make purchases of over $500 to meet the threshold for the sale. So, as a result of both consumer behavior and because Defendant's Products routinely cost at least $500, the vast majority of Defendant's sales meet the $500 threshold—meaning that the vast majority of sales of all products are made at a sale price.

27. In addition, Defendant advertises its sitewide discounts by emailing individuals on its email list, with discount offers similar to those on the website. The emailed offer codes are also applied automatically. Those email messages offer purported discounts materially similar to the website: supposed time-limited purported savings of at least 10% off. For example:







28. These email discounts further drive down the true regular prices of Defendant's Products.

29. Angara advertises its misleading sales using deceptive strikethrough pricing. For example, on October 17, 2025, Defendant advertised a purported limited-time, "sitewide" sale of 10% off. As part of this sale, Defendant listed purported discounted prices in large, black font next to the supposed regular price in smaller, light gray, and strikethrough font along with the purported discount in bright green.




30. The strikethrough price conveys to reasonable consumers that it is the former price and market value of the item. But as explained above, because the sales are so frequent, that is misleading.

31. Angara's primary sales channel (where it generates most of its direct-to-consumer sales) is www.angara.com. It also has online storefronts at Amazon, eBay, and Walmart. An online storefront is a branded seller page operated by the company (in this case, Defendant) where it lists and sells its own products directly to consumers. The products sold through the online storefronts are priced, sold, and shipped by Defendant.

32. As shown in the chart below, Defendant generally offers the same discounts and sells its Products for the same purportedly discounted price across its website and its Amazon, eBay, and Walmart storefronts.

| | **Basket-set Solitaire Diamond Stud Earrings (10/17/2025)** | **Classic Diamond Plumeria Flower Earrings (10/17/2025)** | **Heart-Shaped Ruby Infinity Pendant with Diamond Accents (10/19/2025)** |
|---|---|---|---|
| **Angara advertised regular price** | ~~$659~~ | ~~$949~~ | ~~$1,869~~ |
| **Angara advertised sale price** | $593 | $854 | $1,682 |
| **Amazon storefront price at checkout** | $593.10 | $854.10 | $1,682.10 |
| **eBay storefront sale price** | $593.10 | $854.10 | $1,682.10 |
| **Walmart storefront price** | $593.10 | $854.10 | $1,682.10 |

33. This is not surprising as the Products sold at Defendant's Amazon, eBay, and Walmart storefronts are priced, sold, and shipped by Defendant. Therefore, no matter where the sale occurs—on Defendant's website or one of its online storefronts—the Products routinely and predominantly sell for prices below Defendant's purported regular prices and the listed regular (strikethrough) prices are not the prevailing market rates for its Products.

34. Using these tactics, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during the limited-time promotion. In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y. This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

35. Based on Defendant's advertisements, reasonable consumers believe that the list prices Defendant advertises are Defendant's regular prices and former prices (that is, the price at which the goods were actually offered for sale on Defendant's website before the limited-time offer went into effect). In other words, reasonable consumers believe that the list prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's goods, before the limited-time sale began, and will again have to pay for Defendant's goods when the sale ends.

36. Reasonable consumers also believe that the list prices Defendant advertises represent the true market value of the Products, and are the prevailing prices for those Products; and that they are receiving reductions from those listed regular prices in the amounts advertised. In truth, however, Defendant almost always offers discounts of at least 10% off the purported regular prices it advertises. As a result, the list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells. And, the list prices do not represent the true market value for the Products, because Defendant's Products are almost always

available for at least 10% less than that. The purported discounts Defendant advertises are not the true discount the customer is receiving. Nor are the purported discounts "LIMITED TIME"—quite the opposite, they are almost always available.

**B. Defendant's advertisements are unfair, deceptive, and unlawful.**

37. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

38. Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

39. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

40. In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

41. And finally, California's Unfair Competition Law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

42. Here, as described in detail above, Defendant makes untrue and misleading statements about its prices and supposed discounts. Defendant advertises regular prices that are not its true regular prices, or its former prices, and were not the prevailing

market price in the three months immediately preceding the advertisement. In addition, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendant made false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engaged in unlawful, unfair, and deceptive business practices.

**C. Defendant's advertisements harm consumers.**

43. Based on Defendant's advertisements, reasonable consumers would expect that the list prices Defendant advertises are the regular prices at which Defendant usually sells its Products and that these are former prices that Defendant sold its Products at before the time-limited discount was introduced, and that they are the prevailing market prices for the Products.

44. Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised list price and that they will receive the advertised discount from the regular purchase price.

45. In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

46. Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[4] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while

[4] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

"80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[5]

47. Thus, Defendant's false advertising harms consumers by depriving them of their reasonable expectations. Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations, Plaintiff and the class paid more for the Products they bought than they otherwise would have.

**D. Plaintiff was misled by Defendant's misrepresentations.**

48. On or around January 21, 2024, Ms. Bordeaux purchased a "Vintage Style Cushion London Blue Topaz Solitaire Ring" from Defendant's website, www.angara.com. She made this purchase while living in Sugarloaf, CA.

49. Around the time she made her purchase, Defendant's website was advertising that the list price for the "Vintage Style Cushion London Blue Topaz Solitaire Ring" was $599.

50. According to the Internet Archive nearest to her time of purchase (January 23, 2024), at the time the website was advertising a Valentine's Day Sale offering 10% off:




51. As best she can recall, Ms. Bordeaux added her ring to her basket, but was not yet ready to purchase. She recalls she then got an Angara email offering her 15% off and a topaz pendant as an incentive. She clicked the email and saw the supposed 15%

[5] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

discount applied on the Angara website. This list price on the website (and discount) is reflected in her order confirmation:

52. Ms. Bordeaux read and relied on Defendant's representations on the website and email described above, specifically that the Products had the regular prices listed above and were being offered at a discount for a limited time. For example, when making her purchase, Ms. Bordeaux read and relied on Defendant's representations that the "Vintage Style Cushion London Blue Topaz Solitaire Ring" had a regular price of "$599" and that she was receiving the advertised 15% discount.

**Order Summary**



**Vintage Style Cushion London Blue Topaz Solitaire Ring**

SKU: SR0566LBT
Gemstone Quality: Heirloom
Approximate Total Carat Weight: 1.10 carats
Metal Type: 14K Yellow Gold
Ring Size: 7.5
Engraving: Christian Bordeaux

| | |
|---|---|
| **Quantity** | **1** |
| **Price** | **$599.00** |

| | |
|---|---|
| Subtotal | $599.00 |
| Promotional Savings (EMGOODWISH15) | $89.85 |
| **Tax** | $39.46 |
| **Order Total** | **$548.61** |

53. Based on Defendant's representations described and shown above, Ms. Bordeaux reasonably understood that Defendant regularly (and before the promotion Defendant was advertising) sold the Product she was purchasing at the published regular price, that this regular price was the market value of the Product that she was buying, that she was receiving the advertised discount as compared to the regular price, and that

the advertised discount was only available for a limited time (during the limited-time promotion). She would not have made the purchase if she had known the truth: that the Product was not really discounted as advertised, and that she was not really receiving the advertised discount or a Product worth the advertised regular price.

54. In reality, in the three months prior to Plaintiff's purchase, Angara's jewelry was so frequently on sale that the advertised list price was not the regular price. For example: on October 20, 2023, Angara was offering "10% OFF"; on November 15, 2023, Angara was offering "12% OFF", and on December 4, 2023, Angara was offering "10% OFF"; and as illustrated above, on January 23, 2024, Angara was offering "10% OFF."

55. Plaintiff faces an imminent threat of future harm. Plaintiff would purchase Products from Defendant again in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. For example, while she could watch Defendant's website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in her missing out on the sale (e.g., if the sale is actually limited in time, and not permanent). Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase Products she would like to purchase.

**E. Defendant breached its contract with and warranties to Ms. Bordeaux and the putative class.**

56. When Ms. Bordeaux, and other members of the putative class, purchased and paid for the Angara Products that they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed each time that they made purchases. Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the discounted price advertised on the website.

57. Defendant's website and email confirmations list the market value of the items that Defendant promised to provide (which, for Ms. Bordeaux, is shown above). Defendant agreed to provide discounts equal to the difference between the regular prices, and the prices paid by Ms. Bordeaux and putative class members (also shown above for Ms. Bordeaux). Defendant also warranted that the regular price and market value of the Product Ms. Bordeaux purchased was the advertised list price and warranted that Ms. Bordeaux was receiving the specified discount on the Product.

58. The regular price and market value of the items Ms. Bordeaux and putative class members would receive, and the amount of the discount they would be provided off the regular prices of those items, were specific and material terms of the contract. They were also affirmations of fact about the Products and a promise relating to the goods.

59. Ms. Bordeaux and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

60. Defendant breached its contract by failing to provide Ms. Bordeaux and other members of the putative class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised. Defendant also breached warranties for the same reasons.

**F. No adequate remedy at law.**

61. Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

62. A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiff may be

able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of her legal claims.

63. In addition, to obtain a full refund as damages, Plaintiff must show that the Product she bought has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased a Product that she would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

64. Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

65. Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm. Plaintiff would purchase or consider purchasing Products from Defendant again in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. Thus, she is unable to rely on Defendant's advertising in the future, and so cannot purchase Products she would like to purchase.

## V. Class Action Allegations.

66. Plaintiff brings the asserted claims on behalf of the proposed Class or, in the alternative, on behalf of the proposed California Subclass:

- Class: All persons nationwide who, within the applicable statute of limitations period, purchased one or more Angara Products advertised at a discount on Defendant's website (the "Class").
- California Subclass: All such persons who resided in California when they made their purchases (the "California Subclass").

67. The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

*Numerosity*

68. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are tens or hundreds of thousands of Class and Subclass members.

*Predominance of Common Questions*

69. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

*Typicality & Adequacy*

70. Plaintiff's claims are typical of the proposed Class. Like the proposed Class, Plaintiff purchased Angara Products advertised at a discount on Defendant's website. There are no conflicts of interest between Plaintiff and the Class.

*Superiority*

71. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. Claims.

### First Cause of Action:

### Violation of California's False Advertising Law (FAL)

### (By Plaintiff and the Class, or alternatively, the California Subclass)

72. Plaintiff incorporates each and every factual allegation set forth above.

73. Plaintiff brings this cause of action on behalf of herself and the Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

74. Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

75. Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and Class members.

76. As alleged more fully above, Defendant advertises former prices along with discounts. Defendant does this, for example, by crossing out a higher price (*e.g.*, ~~$1,299~~) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices advertised in strikethrough font from which time-limited discounts are calculated to denote "former" prices, i.e., the prices that Defendant charged before the time-limited discount went into effect.

77. The prices advertised by Defendant are not Defendant's regular prices (i.e., the price you usually have to pay to get the Product in question), because there is nearly always a heavily-advertised ongoing promotion entitling consumers to a discount.

Moreover, for the same reasons, those prices were not the former prices of the Products. Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading. In addition, Defendant's statements that its discounts are available only for a "LIMITED TIME" are false and misleading too.

78. In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

79. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Angara Product. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

80. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Angara Products.

81. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

82. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the

discounts they were promised, and received Products with market values lower than the promised market values.

83. For the claims under California's False Advertising Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**<u>Second Cause of Action</u>:**

**Violation of California's Consumer Legal Remedies Act (CLRA)**

**(By Plaintiff and the Class, or alternatively, the California Subclass)**

84. Plaintiff incorporates each and every factual allegation set forth above.

85. Plaintiff brings this cause of action on behalf of herself and the Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

86. Plaintiff and the Class are "consumers," as the term is defined by California Civil Code § 1761(d).

87. Plaintiff and the Class have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

88. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

89. As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to Class members. Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

90. Defendant violated, and continues to violate, section 1770 of the California Civil Code.

91. Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

92. Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code. Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

93. And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website, including by (1) misrepresenting the regular price of Products on its website, (2) advertising discounts and savings that are exaggerated or nonexistent, and (3) misrepresenting the reason for the sale (*e.g.*, "Mother's Day Sale," when in fact the sale is ongoing and not limited to Mother's Day).

94. Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

95. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Angara Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

96. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Angara Products.

97. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

98. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they

had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

99. Under California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and the Class, seeks injunctive relief.

100. CLRA § 1782 NOTICE. On October 9, 2025, a CLRA demand letter was sent to Defendant's principal place of business and to its registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. In the initial complaint, Ms. Bordeaux sought injunctive relief and did not seek damages on her CLRA claim. But she stated that "[i]f Defendant does not fully correct the problem for Plaintiff and for each member of the Class within 30 days of receipt, Plaintiff and the Class will seek all monetary relief allowed under the CLRA." Now, 30 days have passed and Defendant has not corrected the problem for Plaintiff and for each member of the California Subclass. Accordingly, Plaintiff now seeks all monetary remedies available under the CLRA, including damages and attorney fees. This amendment is expressly allowed by the CLRA. *See* Cal. Civ. Code § 1782 (d) ("An action for injunctive relief … may be commenced without [notice]" and after the notice period elapses the "consumer may amend his or her complaint without leave of court to include a request for damages").

101. A CLRA venue declaration is attached.

**<u>Third Cause of Action</u>:**

**Violation of California's Unfair Competition Law**

**(By Plaintiff and the Class, or alternatively, the California Subclass)**

102. Plaintiff incorporates each and every factual allegation set forth above.

103. Plaintiff brings this cause of action on behalf of herself and the Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

104. Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

105. Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here. In addition, Defendant engaged in unlawful conduct by violating the FTCA. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1), 15 U.S.C. § 52(a). As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA. 16 C.F.R. § 233.1.

***The Deceptive Prong***

106. As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

107. Defendant's representations were misleading to Plaintiff and other reasonable consumers.

108. Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

***The Unfair Prong***

109. As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

110. Defendant violated established public policy by violating the CLRA and FAL, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

111. The harm to Plaintiff and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

112. Plaintiff and the Class could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

113. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

114. For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Angara Products. Defendant's representations were a substantial factor in Plaintiff's purchase decision.

115. In addition, class-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Angara Products.

116. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class members.

117. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

118. For the claims under California's Unfair Competition Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in

the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**Fourth Cause of Action:**

**Breach of Contract (California law)**

**(By Plaintiff and the Class, or alternatively, the California Subclass)**

119. Plaintiff incorporates each and every factual allegation set forth above.

120. Plaintiff brings this cause of action on behalf of herself and the Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

121. Plaintiff and Class members entered into contracts with Angara when they placed orders to purchase Products on Defendant's website.

122. The contracts provided that Plaintiff and Class members would pay Angara for the Products ordered.

123. The contracts further required that Angara provide Plaintiff and Class members with Products that have a market value equal to the regular prices displayed on the website. They also required that Angara provides Plaintiff and the Class members with the discount advertised on the website and listed in the receipt. These were specific and material terms of the contract.

124. The specific discounts were a specific and material term of each contract, and were displayed to Plaintiff and Class members at the time they placed their orders.

125. Plaintiff and Class members paid Angara for the Products they ordered, and satisfied all other conditions of their contracts.

126. Angara breached the contracts with Plaintiff and Class members by failing to provide Products that had a prevailing market value equal to the regular price displayed on its website, and by failing to provide the promised discount. Angara did not provide the discount that Angara had promised.

127. Plaintiff provided Defendant with notice of the breach, by mailing notice letters to Defendant's principal place of business and registered agent on October 9, 2025.

128. As a direct and proximate result of Defendant's breaches, Plaintiff and Class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

129. For the breach of contract claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## Fifth Cause of Action:

## Breach of Express Warranty (California law)

## (By Plaintiff and the Class, or alternatively, the California Subclass)

130. Plaintiff incorporates each and every factual allegation set forth above.

131. Plaintiff brings this cause of action on behalf of herself and the Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

132. Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of Angara Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's website. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

133. This warranty was part of the basis of the bargain and Plaintiff and members of the Class relied on this warranty.

134. In fact, the Angara Products' stated market value was not the prevailing market value. Thus, the warranty was breached.

135. Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's registered agent and to Defendant's principal place of business on October 9, 2025.

136. Plaintiff and the Class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

137. For their breach of express warranty claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**Sixth Cause of Action:**

**Quasi-Contract/Unjust Enrichment (California law)**

**(By Plaintiff and the Class, or alternatively, the California Subclass)**

138. Plaintiff incorporates each and every factual allegation set forth above.

139. Plaintiff brings this cause of action in the alternative to the Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of herself and the Class. In the alternative, Plaintiff brings this claim on behalf of herself and the California Subclass.

140. As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the Class to purchase Angara Products and to pay a price premium for these Products.

141. In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

142. Defendant knowingly, and with the intent to induce reliance, advertised false regular prices and false discounts off of those prices. Plaintiff, and other consumers, justifiably relied on Defendant's misrepresentations and were harmed as a result. *See* Count VIII below (Intentional Misrepresentation).

143. (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff and other Class members are void or voidable.

144. Plaintiff and the Class seek restitution, and in the alternative, rescission.

145. For the quasi-contract/unjust enrichment claims, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**Seventh Cause of Action:**

**Negligent Misrepresentation (California law)**

**(By Plaintiff and the Class, or alternatively, the California Subclass)**

146. Plaintiff incorporates each and every factual allegation set forth above.

147. Plaintiff brings this cause of action on behalf of herself and the Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

148. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and Class members concerning the existence and/or nature of the discounts and savings advertised on its website.

149. These representations were false.

150. When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

151. Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

152. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Angara Products.

153. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

154. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they

had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and /or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

155. For the negligent misrepresentation claims, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## **Eighth Cause of Action:**

## **Intentional Misrepresentation (California law)**

## **(By Plaintiff and the Class, or alternatively, the California Subclass)**

156. Plaintiff incorporates each and every factual allegation set forth above.

157. Plaintiff brings this cause of action on behalf of herself and the Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

158. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and Class members concerning the existence and/or nature of the discounts and savings advertised on its website.

159. These representations were false.

160. When Defendant made these misrepresentations, it knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

161. Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

162. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Angara Products.

163. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

164. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and /or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

165. For the intentional misrepresentation claims, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## VII. Relief.

166. Plaintiff seeks the following relief for herself and the Class and Subclass:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed Class and Subclass;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## Demand For Jury Trial

167. Plaintiff demands the right to a jury trial on all claims so triable.

Dated: March 11, 2026

Respectfully submitted,

By: <u>*/s/ Jonas Jacobson*</u>

Jonas Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*